466 So.2d 1006 (1985)
Ex parte Darrell D. WHISENANT.
(Re: Darrell D. Whisenant v. State of Alabama).
83-824.
Supreme Court of Alabama.
January 25, 1985.
Fulton S. Hamilton, Simpson, Hamilton & Ryan, Huntsville, for petitioner.
Charles A. Graddick, Atty. Gen., and Thomas R. Allison, Asst. Atty. Gen., for respondent.
PER CURIAM.
Petitioner Darrell Whisenant, a juvenile, was taken into custody in connection with an investigation into the murder of Alan Frix, the burglary of Frix's residence, and the theft of Frix's automobile. After allegedly *1007 being given his Miranda rights, Whisenant made oral and written statements implicating himself in the crimes. A petition was filed seeking to transfer Whisenant from juvenile court to circuit court for prosecution as an adult. Whisenant's confession was offered at the transfer hearing to establish probable cause. The juvenile court, after consideration of the factors listed in Code 1975, § 12-15-34(d), granted the petition. On appeal, the Court of Criminal Appeals affirmed the decision. 466 So.2d 995. We granted certiorari to consider the question whether Whisenant's confession was admissible at the transfer hearing.
Whisenant contends that the statement was inadmissible because he was not informed that he had a right to communicate with a parent or guardian, as is required by A.R.J.P. 11(A)(4). Rule 11(A) provides:
"(A) When the child is taken into custody, he must be informed of the following rights by the person taking him into custody:
"(1) that he has the right to counsel;
"(2) that if he is unable to pay a lawyer and if his parents or guardian have not provided a lawyer, one can be provided at no charge;
"(3) that he is not required to say anything and that anything he says may be used against him; and
"(4) if his counsel, parent, or guardian is not present, that he has a right to communicate with them, and that, if necessary, reasonable means will be provided for him to do so."
Rule 11(A)(1), (2), and (3), taken together, are substantially the same as the warnings required in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). By virtue of Rule 11(A)(4), this Court included an additional warning for the protection of juveniles. Given the applicability of the exclusionary rule to the first three warnings mandated by Miranda, the threshold question, then, is whether the exclusionary rule is equally applicable to the fourth requisite. We think this question is self-answering. The very inclusion of this fourth requisite in Rule 11(A), as an additional right to be accorded children within the protection of that rule, precludes any rational basis for distinguishing the treatment of this fourth warning from that accorded the first three.
The fallacy of the rationale employed by the Court of Criminal Appeals is demonstrated in the following sentence: "Neither Rule 11 or Rule 21 requires that the juvenile actually be advised by counsel or parent before waiving his rights." This treatment of the requisites prescribed by Rule 11 places subparagraph (4) on a different level, or treats it as being of a different quality, than the warnings listed under subparagraphs (1), (2), and (3). In reality, each of the four requisites stands on the same footing. To omit the fourth warning is as fatal as to omit of any one of the first three.
It is not a matter of a competent juvenile's capacity to waive his rights against self-incrimination. Rather, the question is whether he was advised of each of the four requisite elements prescribed by Rule 11(A). If any one or more of these warnings are omitted, the use in evidence of any statement given by the child is constitutionally proscribed. (It is worthy of note that the ongoing debate surrounding the court-created exclusionary rule with respect to Fourth Amendment rights is not here involved. The Fifth Amendment's protection against self-incrimination bears its own exclusionary rule.)
We turn now to the ultimate question, which, admittedly, is more difficult. May Whisenant's statement, concededly inadmissible in guilty/innocent determination proceedings, nevertheless be admissible in a probable cause hearing to determine whether he should be transferred to the circuit court and tried as an adult? In other words, is his right not to be compelled to give evidence against himself (Art. 1, § 6, Ala. Const.1901), as that constitutional proscription is implemented by the guidelines of A.R.J.P. 11(A), being compromised *1008 by allowing his otherwise inadmissible extrajudicial statement to be used in a transfer hearing?
Code 1975, § 12-15-66(b), is a codification of the general law made applicable to children. It reads in part:
"An extrajudicial statement which would be constitutionally inadmissible in a criminal proceeding shall not be received in evidence over objection."
The Court of Criminal Appeals, citing § 12-15-66(b) in Ash v. State, 424 So.2d 1381 (Ala.Cr.App.1982), held that the admissibility issue with respect to the child's statement was properly raised and addressed at a transfer hearing. This Court, however, in Winstead v. State, 371 So.2d 418 (Ala.1979), and in Snow v. State, 423 So.2d 220 (Ala.1982), held that consideration of constitutional issues concerning admissibility of a child's statement, while appropriate in the later guilty/innocent determination proceeding, was not appropriate in a transfer hearing because of the probable cause nature of such a hearing.
On reflection, we are now clear in our resolve that the Court of Criminal Appeals correctly ruled in Ash and that this Court incorrectly ruled in Winstead and Snow. Winstead's emphasis on the proposition that, because the transfer hearing is not held to determine innocence or guiltand thus the strict rules of evidence do not applyoverlooks an essential element in the nature of the evidence in question. We are not here speaking of evidence in the ordinary sense of the word. Indeed, we are not talking about admissibility as governed by the rules of evidence.
Instead, we are talking about evidence in the form of an inculpatory statement of the accused, the admission of which is violative of his constitutional right to remain silent, unless he has first been advised of that right, as implemented by statutes, case law, and rules of court, and, upon being so advised, has voluntarily waived that fundamental right. We find nothing in the nature and character of a transfer hearing, vis-a-vis a guilty/innocent determination hearing, that transcends the absolutism of the fundamental guarantee against self-incrimination.
At the transfer hearing, his statement was offered as "evidence against himself," within the very proscriptive language of the State Constitution. To relax the strict rules of evidence for purposes of the transfer hearing, when its application is restricted to matters ordinarily governed by the rules of evidence, is one thing; but to carry its application to the extent of allowing the admission of an otherwise inadmissible statement of the accused is constitutionally impermissible. The right against self-incrimination protected by the State Constitution with respect to the trial on the merits is the same right that is likewise protected with respect to the transfer hearing.
Therefore, we reverse the judgment of the Court of Criminal Appeals and remand this cause for the entry of an order consistent with this opinion.
REVERSED AND REMANDED.
FAULKNER, JONES, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX and BEATTY, JJ., dissent.
TORBERT, Chief Justice (concurring in part and dissenting in part).
I dissent from that part of the majority opinion which holds that constitutional issues concerning the confession can be raised at the transfer hearing. Before I address that issue, I think it would be useful to explain why the warning set forth in A.R.J.P. 11(A)(4) must be given.
I begin with a review of the reasons for the holding in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Supreme Court spoke of the Fifth Amendment privilege:
"[It] serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves. We have concluded that without proper safeguards the process of in-custody interrogation *1009 of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored."
Miranda v. Arizona, 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966). In order to protect the privilege, the Court held that before a statement obtained would be admitted, the individual must be given what are now known as the Miranda rights. Voluntary statements are admissible. Id. at 478, 86 S.Ct. at 1629-30. The Miranda rights are designed to make an individual in custody aware of the privilege against self-incrimination. Without a showing that one had a recognition of his rights, it is difficult to establish that those rights were knowingly, intelligently, and voluntarily relinquished and that any statement was made voluntarily.
"The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the privilege so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given. Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation; a warning is a clearcut fact. More important, whatever the background of the person interrogated, a warning at the time of the interrogation is indispensable to overcome its pressures and to insure that the individual knows he is free to exercise the privilege at that point in time."
Id. at 468, 469, 86 S.Ct. at 1625.
Miranda set up a structured procedure to determine whether a confession was admissible. The prescribed warnings must be given as a matter of course to ensure that the individual is aware of his rights. Failure to give the warnings before interrogation begins results in a determination that the statement given is inadmissible. Id., 384 U.S. at 476, 86 S.Ct. at 1628-29. Once the warnings are given, the admissibility of the statement depends upon whether under the totality of the circumstances the individual knowingly, intelligently, and voluntarily waived the privilege against self-incrimination. Id., 384 U.S. at 444, 86 S.Ct. at 1612; Wright v. State, 340 So.2d 74 (Ala.1976); Fare v. Michael C., 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).
In Fare, the Supreme Court held that a request by a juvenile to see his probation officer was not a per se invocation of his Fifth Amendment rights. The Court noted that "[w]here the age and experience of a juvenile indicate that his request for his probation officer or his parents is, in fact, an invocation of his right to remain silent, the totality approach will allow the court the necessary flexibility to take this into account in making a waiver determination." Id., 442 U.S. at 725, 99 S.Ct. at 2572. Because of the lack of special emphasis on the parental relationship, the implication of Fare is that the Court would not require any additional Miranda-type warnings concerning the right to communicate with parents or guardians in the case of juveniles.[1] In the present case, the Court of *1010 Criminal Appeals followed the lead of the Supreme Court and held that whether the juvenile was given an opportunity to communicate with a parent or guardian is a factor to be considered in determining whether, under the totality of the circumstances, the juvenile waived his rights. Whisenant v. State, 466 So.2d 995 (Ala. Crim.App.1984).
We recently had occasion to discuss the privilege against self-incrimination and the Miranda protections of the privilege as applied to juveniles:
"In this country we have zealously guarded the rule against self-incrimination. It is our opinion that nothing can be more odious than to require a person, or allow a person innocently, to testify against himself. This right is protected for adults in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Would it not be equally fair to allow this same protection to a juvenile defendant? Obviously, we should not make a rule favorable to adults and unfavorable to children."
Walker v. State, 433 So.2d 469, 473 (Ala. 1983). As this quote indicates, children deserve no less protection against coerced or innocent self-incrimination than do adults. The question is then presented as to whether the standard Miranda warnings protect a juvenile to the same extent they protect adults.
It has been asserted that juveniles can not make an intelligent, knowing, and voluntary waiver without some kind of guidance, and one study has indicated that ninety percent of a test group of juveniles, whose average age was fourteen, did not fully understand the Miranda warnings after the warnings had been read to them. Comment, Fare v. Michael C: Blurring the Distinction Between Minors and Adults in Custodial Interrogations, 12 Sw.U.L.Rev. 129 (1981).[2]
Several states have decided that juveniles need more protection than adults to ensure they do not mistakenly waive their right against self-incrimination.[3] While the majority of states include considerations of age, maturity, and opportunity to consult with an interested adult as factors to be considered under the totality-of-the-circumstances test in determining if there was a valid waiver, there are compelling reasons why specific safeguards are appropriate.
The Indiana Supreme Court articulated some of the reasons for establishing different safeguards:
"The concept of establishing different standards for a juvenile is an accepted legal principle since minors generally hold a subordinate and protected status in our legal system. There are legally and socially recognized differences between the presumed responsibility of adults and minors. Indeed the juvenile justice system ... is substantially different in philosophy and procedure from the adult system. This State, like all the others, has recognized the fact that juveniles many times lack the capacity and responsibility to realize the full consequences of their actions. As a result of this recognition minors are unable to execute *1011 a binding contract, unable to convey real property, and unable to marry of their own free will. It would indeed be inconsistent and unjust to hold that one whom the State deems incapable of being able to marry, purchase alcoholic beverages, or even donate their own blood, should be compelled to stand on the same footing as an adult when asked to waive important ... rights at a time most critical to him and in an atmosphere most foreign and unfamiliar." (Citations omitted.)
Lewis v. State, 259 Ind. 431, 437, 288 N.E.2d 138, 141 (1972).
Louisiana, in rejecting the totality-of-the-circumstances test, pointed out that the considerations leading to the holding in Miranda compel special handling of juveniles:
"[T]he rights which a juvenile may waive before interrogation are so fundamental to our system of constitutional rule and the expedient of requiring the advice of a parent, counsel or adviser so relatively simple and well established as a safeguard against a juvenile's improvident judicial acts, that we should not pause to inquire in individual cases whether the juvenile could, on his own, understand and effectively exercise his rights. Assessments of how the `totality of the circumstances' affected a juvenile in a particular case can never be more than speculation. Furthermore, whatever the background of the juvenile interrogated, assistance of an adult acting in his interest is indispensable to overcome the pressures of the interrogation and to insure that the juvenile knows he is free to exercise his rights at that point in time.
"....
"Moreover, such a rule will relieve the police from having to make a subjective judgment in each case. As noted by the Indiana Supreme Court in Lewis v. State, 259 Ind. 431, 288 N.E.2d 138, 141 (1972):
"`The authorities seeking to question a juvenile enter into an area of doubt and confusion when the child appears to waive his rights to counsel and against self-incrimination. They are faced with the possibility of taking a statement from him only to have a court later find that his age and the surrounding circumstances precluded the child from making a valid waiver. There are no concrete guidelines for the authorities to follow in order to insure what [sic] the waiver will be upheld. The police are forced to speculate as to whether the law will judge this accused juvenile on the same plane as an adult in regard to the waiver of his constitutional rights, or whether the court will take cognizance of the age of the child and apply different standards.
"`....
"`... It is harmful to the system of criminal justice to require law enforcement authorities to second guess the courts in the area of constitutional rights. Clearly defined procedures should be established in areas which lend themselves to such standards in order to assure both efficient police procedure and protection of the important constitutional rights of the accused. Age is one area which lends itself to clearly defined standards.'"
State in Interest of Dino, 359 So.2d 586, 591 (La.1978).
The Constitution of Alabama gives this Court the authority to promulgate rules of procedure in all courts. Ala. Const. 1901, amend. 328, § 6.11. The constitutional authority in the area of rules of juvenile procedure is codified in Code 1975, § 12-15-2(c). A.R.J.P. 11(A) states that a juvenile must be informed of certain rights. In addition to the standard Miranda warnings, a juvenile must also be informed that he can communicate with a parent or guardian. I believe that such a warning is a necessary procedural safeguard to protect a juvenile from innocently waiving his privilege against self-incrimination.[4] Requiring *1012 such a warning does not significantly increase the burden on law enforcement officials and, in fact, should promote efficiency by ensuring that constitutional guidelines are met. This simple warning will give the juvenile the opportunity to obtain the guidance that may be necessary in order for him to evaluate his rights.
Not only does being informed of the right to communicate with a parent or guardian give the juvenile an opportunity to secure guidance from the parent or guardian, but also the parent or guardian may be the conduit through which the juvenile secures an attorney. A.R.J.P. 11(A)(2) recognizes that the child may rely on a parent or guardian to provide a lawyer. While a juvenile is supposed to be informed that he can have an attorney, "`[i]t is fatuous to assume that a minor in custody will be in a position to call an attorney for assistance,' [In Re Michael C.], 21 Cal.3d 471, 475-476 [146 Cal.Rptr. 358, 360], 579 P.2d 7, 9 (1978), quoting People v. Burton, 6 Cal.3d 375, 382 [99 Cal.Rptr. 1, 5], 491 P.2d 793, 797 (1971), or that he will trust the police to obtain a lawyer for him." Fare v. Michael C., 442 U.S. 707, 730, 99 S.Ct. 2560, 2574, 61 L.Ed.2d 197 (1979) (Marshall, J., dissenting). The importance of having access to legal counsel is thoroughly discussed in Miranda, 384 U.S. at 466, 467, 86 S.Ct. at 1623, 1624. Therefore, I agree that a juvenile must be informed of all of the rights contained in A.R.J.P. 11(A) prior to custodial interrogation as a prerequisite to the admission in a guilt determinative proceeding of any statement obtained.
However, Whisenant's statement was not used in a guilt determinative proceeding. The statement was offered to establish probable cause in the transfer hearing, as is required under Code 1975, § 12-15-35(f). Duncan v. State, 394 So.2d 930 (Ala.1981). A transfer hearing has been classified as a probable cause hearing, Winstead v. State, 371 So.2d 418 (Ala. 1979), and because it is not held to determine guilt or innocence, the strict rules of evidence do not apply. Winstead, supra; Vincent v. State, 349 So.2d 1145 (Ala. 1977); Gulledge v. State, 419 So.2d 219 (Ala.1982).
In Winstead we held that failure to comply with § 12-15-67 (now repealed), which made a juvenile's statements inadmissible unless made with counsel present, did not preclude the use of the statement to establish probable cause at the transfer hearing. A.R.J.P. 21, prior to amendment in 1982, conformed with the provisions of § 12-15-67. When § 12-15-67 was repealed, A.R. J.P. 21 was amended, and it now provides:
"An extrajudicial statement made by a child may be admissible if given by the child in accordance with the requirements of the Constitution and the prevailing case law as expressed by the appellate courts."
A.R.J.P. 21 now substantially conforms with the provisions of Code 1975, § 12-15-66(b), which states:
"An extrajudicial statement which would be constitutionally inadmissible in a criminal proceeding shall not be received in evidence over objection."
This Court said in Snow v. State, 423 So.2d 220 (Ala.1982), that constitutional questions concerning the admissibility of evidence raised by appellant, while relevant at a later proceeding, are not appropriate in a transfer hearing. This holding is in accord with the general rule that such constitutional questions are not properly raised in probable cause hearings. See Rule 5.1, Federal Rules of Criminal Procedure, Notes of Advisory Committee on Rules. In Ash v. State, 424 So.2d 1381 (Ala.Crim. App.1982), the Court of Criminal Appeals said that the issue of the admissibility of the juvenile's statement had to be addressed at the transfer hearing because of § 12-15-66(b). Just as we held in Winstead that § 12-15-67 and, implicitly, old A.R.J.P. 21 did not preclude admission of a possibly tainted statement, at a transfer *1013 hearing, the holding in Snow implicitly determined that § 12-15-66(b) and new A.R. J.P. 21 do not preclude the use of such a statement at a transfer hearing. To the extent that the holding in Ash conflicts with this Court's decision in Snow, Ash should be overruled.
Therefore, I believe that Whisenant's statement is not inadmissible at the transfer hearing under § 12-15-66(b) or A.R. J.P. 21.
MADDOX and BEATTY, JJ., concur.
NOTES
[1] While it is clear that the privilege against self-incrimination applies to juveniles, In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), it is not clear that any Miranda warnings are required to be given to juveniles. In Fare the Court assumed, without deciding, that Miranda did apply. Fare v. Michael C., 442 U.S. 707, 717 n. 4, 99 S.Ct. 2560, 2567 n. 4, 61 L.Ed.2d 197. In California v. Prysock, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981), the Court apparently again assumed Miranda did apply to juveniles. At least one commentator, however, believes that the Court will require more warnings for some juveniles. W. Ringel, Searches and Seizures, Arrests and Confesions, § 26.6(b)(1) (2d ed. 1984). Support for the view that juveniles may require expanded Miranda rights can be found in the pre-Fare cases of Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), and Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962), where the Court stressed the need for adult advice.
[2] See, also, K. Seman, A Juvenile's Waiver of the Privilege Against Self IncriminationA Federal and State Comparison, 10 Am.J.Crim.L. 27 (1982) (studies indicate a lower level of understanding of Miranda warnings in juveniles than in adults); Comment, Interrogation of Juveniles: The Right to a Parent's Presence, 77 Dick.L.Rev. 543 (1973); A. Ferguson and A. Douglas, A Study of Juvenile Waiver, 7 San Diego L.Rev. 39 (1970).
[3] Indiana: Lewis v. State, 259 Ind. 431, 288 N.E.2d 138 (1972); Louisiana: State In Interest of Dino, 359 So.2d 586 (La.1978); Vermont: In Re E.T.C., 141 Vt. 375, 449 A.2d 937 (1982); Pennsylvania: Commonwealth v. Smith, 472 Pa. 492, 372 A.2d 797 (1977); Connecticut: Conn. Gen.Stat. § 46b-137(a) (1983); Colorado: Colo. Rev.Stat. § 19-2-102(3)(c)(I) (1973); New Mexico: N.M.Stat.Ann § 32-1-27 (1978); North Carolina: N.C.Gen.Stat. § 7A-595(a)(3) (1981); Oklahoma: Okla.Stat. tit. 10 § 1109(A) (1981).
[4] The additional protection for juveniles is in keeping with Miranda's encouragement to "search for increasingly effective ways of protecting the rights of individuals while promoting efficient enforcement of our criminal laws." Miranda v. Arizona, 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966).