ON RETURN TO REMAND
On remand, the Juvenile Court judge of Cullman County held an evidentiary hearing and issued a written order in complete and commendable compliance with our opinion on original submission. His written order is supported by the record; it is attached hereto as an appendix.
Based upon that order, the judgment of the Juvenile Court transferring Scott to the circuit court for criminal prosecution as an adult is affirmed.
OPINION EXTENDED; AFFIRMED.
All Judges concur.
APPENDIX
In the District Court of
Cullman County, Alabama
Case No. JU 88-101
State of Alabama, Plaintiff,
 v.
Gary Ray Scott, Defendant.
 ORDER
On February 21, 1989, a hearing was held before the Court, at the direction of the Court of Criminal Appeals, pertaining to the admissibility under Rule 11(A), A.R.J.P., of a statement given by the defendant on April 7, 1986, to Officer Sharp of the Fultondale Police Department and, if that statement is involuntary, whether this affects the admissibility of a statement given by the defendant later that night to Sergeant Nesmith of the Alabama Bureau of Investigation and Deputy Ed Lee of the Cullman County Sheriff's Department. Based on the testimony at that hearing and the observations at that hearing of the demeanor of the persons present, the Court makes the following findings of fact and conclusions of law.
The Court holds that the statement given to Officer Sharp was voluntary and non-compelled. Prior to making the statement the Defendant had revealed to Patsy Carradine, the sister of the wife of the Defendant's stepfather, that he had killed a person in Blount County in what he described as self-defense. Mrs. Carradine advised the defendant that he should tell this to the Fultondale Police Department, and the defendant accepted this advise. While the defendant was somewhat below average in intelligence, he was not mentally retarded. Furthermore, he had had previous involvement with law enforcement officials, having been placed on juvenile probation in September 1985 stemming from a charge of first degree theft of property. The *Page 766 
Court finds that the defendant was not coerced or induced to follow Mrs. Carradine's advice, and that he freely accepted this advice and voluntarily went to the Fultondale Police Department with her.
At the police station the defendant and Mrs. Carradine walked up to Officer Sharp, and the defendant said to Sharp that he wanted to talk to a police officer about a murder in Blount County. Sharp replied that he was a police officer and if they would come back into his office he would talk to them. The three entered Sharp's office. The defendant then said to Sharp that he wanted to confess to a murder he committed in Blount County. Sharp said not to make any more statements until he could advise him of his rights and turn on a tape recorder. The defendant replied "Turn the motherfucker on." After the defendant was advised of his adult miranda rights and the tape recorder was turned on, the defendant made a statement. During this statement the defendant said that he had turned himself in voluntarily and that in doing so he had followed Mrs. Carradine's advice. He also acknowledged that he had not been threatened by the police. Prior to the statement the defendant was not told he was under arrest. After the statement the defendant was taken to the juvenile detention center.
The Court allowed the playing of the defendant's taped statement to Sharp for the limited purpose of determining the demeanor of both Officer Sharp and the defendant as well as Patsy Carradine during the interview so as to shed light on the voluntariness or involuntariness during the time of the interview. Therefore, the Court did not consider the statement given by the defendant to officer Sharp for the purpose of determining the defendant's guilt or innocence or for determining the defendant's probability or involvement as the same would apply to any of the factors for this Court to consider in certifying or not certifying Gary Ray Scott as an adult, but for the sole purpose of determining voluntariness or involuntariness of the defendant's statement. However, other factors the Court did consider as to the defendant's statement to Officer Sharp in determining the voluntariness or involuntariness of the defendant's statement are as follows: (1) the defendant came to the police station voluntarily, after accepting Mrs. Carradine's advice; (2) Sharp's actions in taking the statement were only in compliance with the defendant's request, and would not reasonably have been seen as a restriction on the defendant's freedom; (3) the defendant was not told before the statement or during the statement that he was under arrest or being taken into custody; (4) the first restraint on the defendant occurred after the statement, when he was taken to the juvenile detention facility.
The Court being aware that Rule 11(A) requires that certain warnings be given to a juvenile when he is taken into custody, and under Ex parte Whisenant, 466 So.2d 1006 (Ala. 1985), a statement made while in custody may not be used at a transfer hearing or a guilt/innocence determination unless the warnings are given and waived. Therefore, the Court emphasizes again that any statements made by the defendant to Officer Sharp were not used for this Court's determination of guilt/innocence but only for the limited purposes of determining the voluntariness or involuntariness of the statement. The possibility exist however that if the State had offered the defendant's statement of Officer Sharp that it could have been admissible in that the defendant was not in custody, when he made his statement to Sharp and further that Rule 11(A) would not have barred the use of the statement in that Rule 11(A) applies only to a statement made while a defendant is in custody. However, the State of Alabama, offered the defendant's statement to Officer Sharp for the limited purposes of the issue of voluntariness and the Court allowed it in for that limited purpose therefore, the issue as to whether or not Rule 11(A) applies to this statement is not before the Court at this time.
The Court finds that even if the statement by the defendant to Officer Sharp was inadmissible because of a failure to give the complete warning under Rule 11(A), the second statement to Nesmith and *Page 767 
Lee would not necessarily be rendered inadmissible as a result. In Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285,84 L.Ed.2d 222 (1985), the United States Supreme Court held that a statement given after proper Miranda warnings is not tainted by an earlier unwarned statement where both statements are voluntary. Where the Juvenile Miranda warnings of Rule 11(A) are a creation of a State law, because the similarity of purpose with the federal constitutional requirements it is appropriate to apply a similar rule here. The voluntariness of the second statement to Nesmith and Lee has been determined and that decision has been upheld by the Court of Criminal Appeals,Scott v. State, 501 So.2d 1273 (Ala.Cr.App. 1986); it thus need only be determined whether the first statement to Sharp was also voluntary.
A determination of whether a statement is voluntary depends on the totality of the circumstance. Scott v. State, supra. The circumstances here indicate that the first statement was voluntary. As was noted above, the defendant came freely to the police station for the purpose of making a statement to police; while he was following the advice of Patsy Carradine in doing so, the defendant himself acknowledged during the statement that he made the decision himself, and the Court finds as a fact that this was the case. Furthermore, and just as important, the defendant has previously made three incriminating statement to persons related to him by marriage: one to Amy Wadsworth, one to David Norris, and one earlier the same day to Patsy Carradine. These statements were consistent with that made to Officer Sharp, if not as detailed. The existence of these statements, voluntary and apparently spontaneous, supports the conclusion that the statement to Sharp was also voluntary.
The actions of Sharp in obtaining the statement, and the response of the defendant, also indicate voluntariness. The defendant's first incriminating words to Sharp, that he wanted to confess to a murder, were made spontaneously and not in response to any questioning by Sharp. When Sharp told him that he would need to give him his rights and turn on a tape recorder, the defendant said "Turn the motherfucker on," a statement hardly expressing reluctance. The Defendant was not given his full Juvenile Miranda rights, he was told the standard Miranda warnings, indicating that he did not have to speak, and clearly he waived these rights. The defendant was not threatened or coerced in any way; furthermore, Sharp testified that he was calm during the statement. While he was only seventeen, the defendant had had at least one previous encounter with the law when he was placed on probation in September of 1985 as the result of a charge of first degree theft.
With regard to any contention that the defendant was incapable of making a voluntary statement because of his I.Q., this has been rejected as a controlling factor by the Court of Criminal Appeals, Scott v. State, supra.
The testimony at the hearing indicated that when Mrs. Carradine advised the defendant to go to the police, she stated to him that this was also the advice of her lawyer with whom she had spoken. The argument could be made that this amounted to legal advice to the defendant, and that this rendered his action in going to the police involuntary. In the defendant's statement to Sharp, however, he said that he was taking Mrs. Carradine's advice and did not mention the lawyer. Based on this the Court finds that fact that a lawyer concurred in Mrs. Carradine's advice was not compelling to the defendant. There was also testimony at the hearing that Mrs. Carradine inquired after the statement as to the existence of a reward in the case, and the argument was made that Mrs. Carradine had a personal motive for advising the defendant to turn himself in. Mrs. Carradine testified at the hearing that she did make such an inquiry, but explained that it was made some time after the statement was made, and that this was for the purpose of obtaining money to pay a lawyer for the defendant. The Court finds this testimony credible based on its observation of the witness. Moreover, the Court finds as a fact that the defendant was only *Page 768 
following Mrs. Carradine's advice to go to authorities, based on his own words in this statement, and that he did so regardless of Mrs. Carradine's motives.
The Court, therefore, finds that the defendant's statement to Officer Sharp of the Fultondale Police Department was a voluntary and noncompelled statement by the defendant, and further, that if the statement was tainted by the failure of Officer Sharp to administer to the defendant his Juvenile Miranda rights, that this taint would not carry over to the statement given by the defendant to Sergeant Nesmith and Investigator Lee, this being the statement that this Court allowed in during the original hearing in which the Court certified the defendant as an adult.
Done this the 25th day of April, 1989.
 (s) J. Wilfred Tucker J. WILFRED TUCKER, District Judge