623 So.2d 364 (1992)
E.C.
v.
STATE.
CR-91-753.
Court of Criminal Appeals of Alabama.
September 18, 1992.
Rehearing Denied November 13, 1992.
Certiorari Denied June 25, 1993.
*365 R. Wendell Sheffield of Sheffield, Sheffield, Sheffield & Lentine, Birmingham, for appellant.
James H. Evans, Atty. Gen., and Norbert H. Williams, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 1920353.
BOWEN, Judge.
The appellant, 16-year-old E.C., appeals from an order of the juvenile court transferring him to the circuit court for criminal prosecution as an adult on the charge of felony-murder.
On this appeal of the transfer order, the appellant raises two issues. He contends that the statement he made to Bessemer police Sgt. T.L. Cruce was inadmissible, and that the State did not establish probable cause to believe that he committed the charged offense. Because we hold that the appellant's statement should have been suppressed and that the transfer order is due to be reversed on that ground, we do not address the probable cause issue.
The appellant argues that the admission of his statement violated his right to counsel under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), as well as his right to communicate with his parent under Rule 11(A)(4), A.R.Juv.P. We agree with the second part of this argument. We hold that the appellant made an ambiguous or equivocal request to communicate with his mother and that the failure of the interrogating officer to clarify this request before resuming questioning mandates the suppression of the appellant's statement.
E.C. was arrested for the instant offense and was brought to Sgt. Cruce's office on the evening of November 13, 1991. Sgt. Cruce testified that he "wanted [E.C.'s mother] down there," and he "tried to call her," R. 120, but that she did not have a telephone. R. 121. Cruce knew where the appellant's mother lived and he sent another officer to her house, but that officer was unable to find her. R. 129-31. Sgt. Cruce testified that he had known E.C. and his mother for 13 or 14 years. He had had contact, both official and nonofficial, with each of them on numerous occasions, and he had arrested E.C. "several times." R. 140. The officer stated that although he had gotten the appellant's mother "down there numerous times," R. 120, it was "hard to get her down there." R. 129.
Sgt. Cruce read E.C. his rights and asked him if he wanted to speak to a lawyer or to his mother. Sgt. Cruce initially stated that E.C.'s response was "no" to both inquiries. R. 85, 101-102. On cross-examination, however, *366 Sgt. Cruce testified that "he never did say no, I do not want a lawyer." R. 165.
After informing E.C. of his rights, Sgt. Cruce handed E.C. a waiver of rights form, watched while the juvenile appeared to read the form, and obtained E.C.'s signature on the form. After ascertaining that E.C. was willing to give a taped statement, Sgt. Cruce recorded the following conversation:
"Q. The date is November 13, 1991, the place is the Bessemer Police Department. The time is 5:41 PM ... Present: Sgt. T.L. Cruce and E.C. ... All right, E.C., before asking you any questions, it is the law that you must be advised of your following constitutional rights. You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, ... one will be appointed to represent you before any questioning, if you wish. You have the right to talk to your parent or guardian and have them present during any questioning. If you wish to communicate with counsel, your parent, guardian, reasonable means will be provided to do so. You can decide at any time to exercise these rights and not answer any questions or make any statements. Now, do you understand what I've just told you?
"A. Yes, sir.
"Q. All right, do you want [your mother] down here?
"A. I can't ... I ain't got nobody to get her down here. I ain't got no....
"Q. Well, have you got a lawyer?
"A. I can get my ... yes, my mama got a lawyer.
"Q. Well, you want ... do you want to give me a statement?
"A. What is that?
"Q. Huh?
"A. What? I'm sorry.
"Q. Do you want to give me a statement now, after I've read you all these rights?
"A. What a statement?
"Q. The taped statement I'm fixing to get from you.
"A. Oh, yes, sir.
"Q. I had to read you all this.
"A. Oh, yes, sir.
"Q. And, you ... you want to ... you want to talk about this incident.
"A. Yes, sir." (Supplemental Record at 1).
Rule 11(A), A.R.Juv.P., provides:
"When the child is taken into custody, he must be informed of the following rights by the person taking him into custody:
"(1) That he has the right to counsel;
"(2) That if he is unable to pay a lawyer and if his parents or guardian have not provided a lawyer, one can be provided at no charge;
"(3) That he is not required to say anything and that anything he says may be used against him;
"(4) If his counsel, parent, or guardian is not present, that he has a right to communicate with them, and that, if necessary, reasonable means will be provided for him to do so."
Subsections (1), (2), and (3) of Rule 11(A) are "substantially the same as the warnings required in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)." Ex parte Whisenant, 466 So.2d 1006, 1007 (Ala. 1985). "In addition to the standard Miranda warnings, [subsection (4) mandates that] a juvenile must also be informed that he can communicate with a parent or guardian." Ex parte Whisenant, 466 So.2d at 1011 (Torbert, C.J., concurring in part and dissenting in part).
When an accused asserts his right to counsel during custodial interrogation, all further questioning must cease until the accused has been given an opportunity to confer with counsel or unless the accused himself initiates further conversation with the police. Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1884-85, 68 L.Ed.2d *367 378 (1981). If the accused makes an ambiguous or equivocal request for counsel, the police should attempt to clarify that request before resuming interrogation. Robinson v. State, 574 So.2d 910, 914 (Ala.Cr.App.1990); Gray v. State, 507 So.2d 1026, 1030 (Ala.Cr. App.1987). Once the accused makes an ambiguous request to speak to an attorney during custodial interrogation,
"`the scope of that interrogation is immediately narrowed to one subject and one only. Further questioning thereafter must be limited to clarifying that request until it is clarified.' Thompson v. Wainwright, 601 F.2d 768, 771 (5th Cir.1979) (emphasis in original); Nash v. Estelle, 597 F.2d 513, 517 (5th Cir.) (en banc), cert. denied, 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979). `Any statement taken by the state after the equivocal request for counsel is made, but before it is clarified as an effective waiver of counsel, violates Miranda.' Owen v. Alabama, 849 F.2d 536, 539 (11th Cir.1988)."
Robinson v. State, 574 So.2d at 914.
The legal principles applicable to the fourth warning (right to communicate with parent) are the same as those applicable to the first three warnings (right to silence and to counsel). See Ex parte Whisenant, 466 So.2d at 1007. See also Atchison v. State, 565 So.2d 1186, 1188 (Ala.Cr.App.1990) (referring to the rights enumerated in Rule 11 as "super-Miranda rights"). "[E]ach of the four requisites [in Rule 11(A) ] stands on the same footing." Ex parte Whisenant, 466 So.2d at 1007. There is no "rational basis for distinguishing the treatment of th[e] fourth warning from that accorded the first three." Id.
Invocation of the juvenile right to parental communication is governed by the same standard as invocation of the Miranda right to counsel. See L.J.V. v. State, 545 So.2d 240 (Ala.Cr.App.1989). "Analogously to the right to see counsel, if a juvenile indicates, in any manner, that he wishes to talk to a parent, the interrogation must immediately cease." L.J.V. v. State, 545 So.2d at 245. See also Smith v. State, 484 So.2d 560, 561 (Ala.Cr.App.1986).
This court has indicated in a prior case that, if a juvenile makes an ambiguous request to communicate with his parent during custodial interrogation, "police officers are allowed to clarify an equivocal invocation of a right." L.J.V. v. State, 545 So.2d at 245 (emphasis added). We now hold, as we did in the context of an ambiguous request for counsel in Robinson v. State, that the police have an affirmative duty, before resuming interrogation, to clarify a juvenile's ambiguous request to communicate with a parent. The duty to clarify an ambiguous request is the same whether the request relates to attorney consultation or to parental consultation: Once a juvenile makes an equivocal statement during interrogation which may be construed as a desire to confer with his parent, "`the scope of th[e] interrogation is immediately narrowed to one subject and one only. Further questioning thereafter must be limited to clarifying that request until it is clarified.'" Robinson v. State, 574 So.2d at 914.
In the present case, when the appellant was asked the question, "do you want [your mother] down here?" he responded, "I can't ... I ain't got nobody to get her down here. I ain't got no...." (Supplemental Record at 1). This response contained an obvious ambiguity which Sgt. Cruce should have clarified before proceeding with the interrogation. Instead, Sgt. Cruce relied on what he thought the appellant meant by the response. The officer testified that, based on his knowledge of E.C. and E.C.'s mother, he interpreted the appellant's answer to mean, "There was no way to get her there ... she wouldn't be there if [the appellant] asked her.... That's my opinion of what he was saying." R. 154. The fact that the response was subject to "interpretation" at all only underscores the fact that it was ambiguous to begin with.
Instead of attempting to have the appellant state clearly whether or not he wished to have his mother present, Sgt. Cruce asked the appellant, "Well, have you got a lawyer?" The appellant's response to that question, "I can get my ... yes, my mama got a lawyer," (Supplemental Record at 1) only heightened the ambiguity of the appellant's response to the first question and validated Chief Justice *368 Torbert's observation, in Ex parte Whisenant, that "the parent or guardian may be the conduit through which the juvenile secures an attorney ... the child may rely on a parent or guardian to provide a lawyer." Whisenant, 466 So.2d at 1012 (Torbert, C.J., concurring in part and dissenting in part). See also Samuel M. Davis, Rights of Juveniles § 3.13 (2d ed. 1991).
"The rationale of courts holding a child's request to see a parent equivalent to a request to see an attorney, ... is that, while an adult in trouble normally requests an attorney's assistance, a child logically expresses his desire for help and his unwillingness to proceed alone by requesting a parent's presence.... [I]n the case of a child, the right to assistance of counsel is hollow unless a parent is present, for a parent is normally the child's only avenue through which to evaluate and exercise the right to counsel."
Id. at 3-64.5.
We disagree with the appellant that his statement, "[M]y mama got a lawyer," was itself an invocation of the right to counsel. However, we do find that that statement, taken in the context of the appellant's immediately preceding answer, necessitated an attempt to clarify exactly what the appellant meant by the two responses and whether he wished to halt the interrogation until his mother, and thereby a lawyer she could provide, was present. Sgt. Cruce conceded that the appellant's two responses, taken alone, displayed ambiguities which he was obliged to clear up. On cross-examination, the following occurred:
"Q [By defense counsel]: But when [the appellant] said, I have an attorney, my mama's got one, is it your testimony that you did not have the obligation to say, do you want your attorney here?
A [By Sgt. Cruce]: Yes. I'd say the way you're putting it, I ha[d] an obligation to say that." R. 171.
Sgt. Cruce maintained, however, that based on the totality of the circumstances, including the officer's knowledge of the appellant and the appellant's mother, as well as the appellant's stated wish to "tell his side of the story," Cruce's interpretation of the appellant's responses was reasonable. The problem with this position, however, is that
"[t]he totality of the circumstances test, which is used to determine whether an accused has `knowingly and voluntarily' waived his Miranda rights, has no role in the determination of whether an accused's request for counsel [and here, his request for a parent] is clear or equivocal."
Owen v. Alabama, 849 F.2d at 539 (citation omitted). Whether the request is equivocal is determined solely by the accused's responses after being advised of his rights. Id. Compare Smith v. Illinois, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (accused who said "Yeah, I'd like to do that," when told he had the right to a lawyer during questioning, unambiguously invoked right to counsel and his later responses to further interrogation may not be used to cast doubt on the clarity of his initial request).
Sgt. Cruce testified that it would not surprise him to know that the appellant had a "full scale I.Q. of 48," R. 139, but in answer to a further question by defense counsel on cross-examination, he stated that he was not familiar with the scale for measuring I.Q., or the significance of a score of 48. We therefore have no basis for concluding from the evidence before us that Sgt. Cruce's assessment of the appellant's mental capacity played any part in the officer's interpretation of the appellant's responses after being informed of his rights.
However, without regard to the appellant's low I.Q., the appellant's two responses were unclear on their face. They should have been made clear before the officer proceeded with the interrogation. Because they were not, the appellant's statement was not shown to have been made pursuant to a valid waiver of his rights under Rule 11(A)(4).
The order of the juvenile court transferring the appellant to the circuit court for prosecution as an adult on the charge of felony-murder is reversed, and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.