McMILLAN, Judge.
This is an appeal from the order of the Jefferson County Juvenile Court transferring the appellant’s case to circuit court.
On March 6, 1989, the appellant was charged in the Jefferson County Juvenile Court with the capital murder of George H. Hale, Jr. Also, on that same date, a delinquency petition was filed against the appellant and the State filed a motion to transfer his case to the Jefferson County Circuit Court. Following a hearing on the State’s motion and consideration of the factors set forth in § 12-15-34, Code of Alabama (1975), the Juvenile Court held that probable cause existed to find that the appellant had committed capital murder and granted the motion to transfer.
The appellant argues that the warnings given to him by police prior to his questioning fail to satisfy the requirements of Rule 11(A), A.R.J.P., in that they failed to con *6 tain a statement that “reasonable means” would be provided for him to communicate with his parents. Appellant likewise argues that certain language contained in the warnings that the police read to him was confusing. He therefore argues that the Juvenile Court erred by admitting into evidence the statement that he gave to police.
The appellant was under investigation for the murder of George H. Hale, Jr. Mr. Hale died as a result of severe blunt force trauma to the head, and his wife was knocked unconscious during the attack; by another man. Although Mrs. Hale was unable to identify her assailant, she identified her husband’s attacker as a Steve Jackson. Mrs. Hale told the police that Jackson had been with the appellant in her backyard on the day before the murder. During their investigation, the police also found the appellant’s name, address, telephone number, and the name of the appellant’s grandmother on a slip of paper near the Hales’ kitchen telephone.
On the night of the murder, Sergeant Paige Forrest Duncan of the Birmingham Police Department interviewed the appellant at his home. The appellant’s grandmother, father, and brother were present during the interview. Sergeant Duncan asked the appellant if he knew anything about what had transpired at the Hale residence that evening, and the appellant replied that he had been to their home to borrow some tools. Sergeant Duncan then asked the appellant in the presence of his family if he would accompany him to the police station to give a statement. After being read his rights, the appellant gave a statement explaining his various contacts with the Hales. The appellant, however, denied returning to the Hale residence after borrowing the sledgehammer. Subsequently, Sergeant Duncan met the appellant at school and again asked him to come down to the police station. Sergeant Duncan was aware at this time of the appellant’s involvement in the murder, since Mario Burks, the person known by the Hales as Steve Jackson, had given a full statement which implicated the appellant. Prior to meeting the appellant, Duncan called the appellant’s grandmother and stated that he needed to speak with the appellant again but did not indicate to her that the appellant was a suspect in the murder. Sergeant Duncan also did not tell the appellant that he was a suspect when he met him at the school.
When they reached the police station, Sergeant Duncan, who was accompanied by Sergeant Don Reynolds, informed the appellant of his rights, reading from a juvenile waiver-of-rights card that stated as follows:
“Before asking you any questions, it is the law that you must be advised of your following Constitutional rights. Number 1, You have the right to remain silent; Number 2, Anything you say can and will be used against you in a court of law; Number 3, You have the right to talk to a lawyer and have him be present with you while you’re being questioned; Number 4, If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish one; Number 5, If you wish to answer questions now without a lawyer present you still have the right to stop answering at any time; Number 6, It is not necessary that you answer questions posed by a detective or any other Birmingham Police Department official, pri- or to having a bond set by the court; Number 7, You have the right to talk to your parent or guardian or have them present during the answering of any questions being asked by any police or law enforcement official.”
Beneath this was a paragraph that stated:
“I have read the above and understand fully each of these rights. Having these rights in mind I wish to make a voluntary statement and answer any questions without contacting an attorney or having one present. No force, threats, or promises have been used by anyone in any way to make me sign this, and I sign this statement after having been orally advised of my constitutional rights set out above, and understanding them in full.”
The appellant signed and dated this form, as did Sergeant Reynolds.
*7 Sergeant Duncan then asked the appellant if he understood all of his rights, and the appellant replied that he did. Duncan testified that the appellant's physical appearance was normal, that his speech was coherent, and that no promises or offers of leniency were made to the appellant to induce him to make a statement. Duncan testified that the appellant initially denied any involvement in the murder and that he continued to profess his innocence even after Duncan advised him that Mario Burks had given a statement to police “which told the full story.” Duncan testified that, in his opinion, the appellant thought that he was bluffing, so Duncan played a small portion of Burks’s statement for him. A short time later, the appellant gave a statement in which he admitted involvement in the murder. The appellant stated that, on the night of the murder, he hid in some bushes by the Hales’ front door while Mario Burks got the victim to come outside. Burks grabbed Mr. Hale as he turned to go back inside, at which time the appellant hit Hale twice in the head with a metal rod from a barbell set. The appellant took the wallet belonging to the victim, which contained $52.00, and the two men left.
In the case subjudice, the appellant argues that the omission of the phrase “reasonable means will be provided” from the language informing him that he could communicate with his attorney, parent, or guardian, as contained in Rule 11(A)(4), A.R.J.P., rendered his statement involuntary and therefore inadmissible against him in the transfer hearing. In support of his argument, appellant relies on our Supreme Court’s decision in Ex parte Whisenant, 466 So.2d 1006 (Ala.1985). However, the facts of Whisenant are readily distinguishable from those of the present case.
In Whisenant, supra, the juvenile was given only those warnings required under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); no mention was made of his rights under Rule 11(A)(4), A.R.J.P., to communicate with his parent or guardian. In reversing the decision of this Court that the statement of the juvenile was admissible, our Supreme Court held as follows:
“Whisenant contends that the statement was inadmissible because he was not informed that he had a right to communicate with a parent or guardian, as is required by A.R.J.P. 11(A)(4). Rule 11(A) provides:
“(A) When the child is taken into custody, he must be informed of the following rights by the person taking him into custody:
“(1) that he has the right to counsel;
“(2) that if he is unable to pay a lawyer and if his parents or guardian have not provided a lawyer, one can be provided at no charge;
“(3) that is he not required to say anything and that anything he says may be used against him; and
“(4) if his counsel, parent, or guardian is not present, that he has a right to communicate with them, and that, if necessary, reasonable means will be provided for him to do so.”
Rule 11(A)(1), (2) and (3), taken together, are substantially the same as the warnings required in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). By virtue of Rule 11(A)(4), this Court included an additional warning for the protection of juveniles. Given the applicability of the exclusionary rule to the first three warnings mandated by Miranda, the threshold question, then, is whether the exclusionary rule is equally applicable to the fourth requisite. We think this question is self-answering. The very inclusion of this fourth requisite in Rule 11(A), as an additional right to be accorded children within the protection of that rule, precludes any rational basis for distinguishing the treatment of this fourth warning from that accorded the first three.”
Whisenant, 466 So.2d at 1007.
In the present case, however, the appellant was advised prior to questioning that he had “the right to talk to [his] parent or guardian or have them present during the answering of any questions being asked by any police or law enforcement official.” *8 The appellant signed a waiver form indicating that he understood his rights and wanted to waive them. At no time did he express the desire to terminate his interview until a parent or guardian could be present.
The appellant likewise takes issue with the following phrase contained in the warnings administered to him:
“It is not necessary that you answer questions posed by a detective or any other Birmingham Police Department official, prior to having a bond set by the court...."
Because the setting of bond is not a pertinent consideration in a juvenile case, appellant contends that the phrase is confusing and should render his statement inadmissible.
In Duckworth v. Eagan, — U.S.-, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989), the Supreme Court addressed a similar issue; there, the defendant was told that counsel will be appointed “if and when you go to court.” In Duckworth, the defendant argued that the language of the Miranda rights administered to him was defective because it failed to provide a clear and unequivocal warning of the right to appointed counsel before interrogation. In holding that the language did not render the defendant’s Miranda warnings inadequate, the Duckworth Court held as follows:
“We have never insisted that Miranda warnings be given in the exact form described in that decision. In Miranda itself, the Court said that ‘[t]he warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant.’ 384 U.S., at 476 [86 S.Ct., at 1629] (emphasis added). See also Rhode Island v. Innis, 446 U.S. 291, 297, 100 S.Ct. 1682, 1687, 64 L.Ed.2d 297 (1980) (referring to ‘the now familiar Miranda warnings ... or their equivalent’). In California v. Prysock, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1982), we stated that ‘the “rigidity” of Miranda [does not] exten[d] to the precise formulation of the warnings given a criminal defendant,’ and that ‘no talismanic incantation [is] required to satisfy its strictures.’ Id., at 359, 101 S.Ct., at 2809.
“Miranda has not been limited to sta-tionhouse questioning, see Rhode Island v. Innis, supra (police car), and the officer in the field may not always have access to printed Miranda warnings, or he may inadvertently depart from routine practice, particularly if a suspect requests an elaboration of the warnings. The prophylactic Miranda warnings are ‘not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected.’ Michigan v. Tucker, 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974). Reviewing courts therefore need not examine Miranda warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably ‘eonve[y] to [a suspect] his rights as required by Miranda ’ ” Prysock, supra, 453 U.S., at 361, 101 S.Ct, at 2810.
Id., — U.S. at -, 109 S.Ct. at 2879-80 (footnotes omitted).
Although Duckworth involves an adult defendant, the Court’s rationale clearly applies to the present case. While the warnings which Sergeant Duncan read to the appellant were not a verbatim rendition of Rule 11(A), A.R.J.P., they conveyed to him in an understandable fashion each of the rights contained therein. This is all the appellant was entitled to.
For the foregoing reasons, the judgment of the juvenile court is correct and it is due to be affirmed.
AFFIRMED.
All the Judges concur.