On Application for Rehearing

JOINER, Judge.
This Court’s opinion released on May 25, 2012, is withdrawn, and the following is substituted therefor.
*450 Keyon Perez Ward was convicted, following a jury trial, of first-degree robbery. See § 13A-8-41, Ala.Code 1975. Before trial, Ward filed an application for youthful-offender status, which was denied on April 14, 2010. On April 13, 2011, Ward was sentenced to 22 years’ imprisonment and was ordered to pay a $1,000 fine, court costs, attorney fees, and $250 to the Alabama Crime Victims Compensation Fund. Ward was also ordered to pay $3,319 in restitution. On May 2, 2011, Ward filed a timely notice of appeal.
The evidence at Ward’s trial tended to show the following. Janice Fernandez, an employee of a BP gas station in Houston County, testified that at 4:50 a.m. on the morning of August 10, 2009, while she was walking to her job, she heard someone yell at her and she then saw two men running toward her; Fernandez testified that one of the two men was carrying a sawed-off shotgun and that the other man was wearing a striped shirt. Fernandez stated that the man wearing the striped shirt threw her to the ground while the other man hit her in the head with the shotgun and kicked her. Fernandez said that the man wearing the striped shirt grabbed her by the arm, pulled her off the ground, and told her to unlock the door and to turn off the alarm; Fernandez testified that she noticed that the man wearing the striped shirt was also wearing black tennis shoes and jeans with a patchwork design. Fernandez testified that once they were inside the store, she opened the safe, and the man wearing the striped shirt took money out of the safe.
Sgt. Lynn Watkins, a member of the Dothan Police Department, testified that she and her tracking dog responded to a call concerning a robbery at the BP station. Sgt. Watkins testified that she and the dog tracked through an opening in the fence behind the gas station, where she found a cellular telephone lying against the fence. The cell phone contained a picture of an individual later identified as Raheimi Kinsey. Sgt. Watkins testified that she also noted a footprint at the gas station.
Sgt. Watkins testified that at one point Officer Michael Conner told her that two men who matched the description of the robbers were last seen walking through a nearby trailer park and that she and the dog went to the trailer park. Sgt. Watkins testified that while at the trailer park, she observed footprints with a similar shoe pattern as the print found at the scene, and she tracked the footprints to a white vehicle parked behind lot D-511 in the trailer park. Sgt. Watkins further testified that Ward and another man were found in the trailer parked on that lot.
Jon Thomas, a member of the Dothan Police Department, testified that he recovered from inside the trailer a pair of Nike brand shoes, a striped shirt, and a pair of shorts with a design on the back of the shorts; the striped shirt was later identified as the striped shirt worn by the man in the surveillance video from the gas station. Thomas also stated that he recovered from inside the trailer a box of Winchester brand .410 shotgun shells; a .410 shotgun had been recovered from the white vehicle parked behind lot D-511 in the trailer park. Thomas further testified that he recovered from the white vehicle several .410-shotgun shells and money in plastic bags from the gas station.
Virgil McGee, who lived in the trailer located at lot D-511, testified that around midnight on August 10, 2009, he saw Ward and Raheimi Kinsey outside his residence. McGee stated that Ward and Kinsey thereafter left McGee’s residence with a shotgun. McGee testified that Ward later returned to his house around 5:00 a.m. and asked McGee for a change of clothes.
*451 After Ward was arrested by Officer Conner and transported to the criminal-investigation division of the police department, Ward made two statements to the police. In Ward’s first statement, he denied being involved in the crime, but admitted that he was with Virgil McGee and Raheimi Kinsey on the morning of the robbery. In Ward’s second statement, however, he claimed that at about the time of the robbery, he was approached by an unknown male and was asked to exchange clothes with the unknown male; Ward stated that he received the shorts and the striped shirt from the unknown male.
During trial, Ward moved to suppress the statements he had made to the police. The circuit court conducted a suppression hearing, outside the presence of the jury, at which Officer Keith Cook, the interrogating officer, and Ward testified. Ward, who was 17 years old at the time of his arrest, testified that he was never asked if he wanted to contact his parents before he signed a waiver-of-rights form and made statements to the police. Ward admitted that he knew that he was under arrest for first-degree robbery at the time he was handcuffed and placed in the back of the police car.
After considering the arguments of the attorneys for both sides, the circuit court denied Ward’s motion to suppress. Ultimately, the jury found Ward guilty of first-degree robbery. The circuit court denied Ward’s motion for a new trial, and this appeal followed.
I.
Ward first argues that the circuit court erred in denying his request for youthful-offender status. Specifically, Ward contends that the circuit court, in denying his request, improperly considered charges that occurred after the present robbery charge. The circuit court conducted a hearing to consider Ward’s application for youthful-offender status. At the hearing, the State argued as follows:
“[Prosecutor]: Judge, we are opposed. If you notice the juvenile record, burglaries, that occurred over different periods of time, March, September. Even three days after one, there was another one that was a robbery case. I know you can’t deny it just on the facts. But he had a weapon — you can consider that — a sawed-off shotgun. So based on the juvenile record, we don’t think he’s a good candidate for youthful offender.”
(R. 3.)
“When deciding whether to grant youthful offender status, it is expected that the nature of the crime charged, along with prior convictions of the defendant, will be considered, as well as any other matters deemed relevant by the court. Clemmons v. State, 294 Ala. 746, 321 So.2d 238 (1975). No prescribed format is required. Edwards v. State, 294 Ala. 358, 317 So.2d 512 (1975). Neither is the trial court required to articulate on the record the reasons for denying youthful offender status to a defendant. Garrett v. State, 440 So.2d 1151 (Ala.Crim.App.1983). In deciding whether or not to accord youthful offender status to an accused person, the discretion of the trial judge is virtually absolute. Morgan v. State, 363 So.2d 1013 (Ala.Crim.App.1978).”
Goolsby v. State, 492 So.2d 635, 636 (Ala.Crim.App.1986).
The record indicates that the circuit court considered Ward’s probation report, as well as the arguments of both the State and Ward’s counsel, before it denied Ward’s request for youthful-offender status. Specifically, in support of its holding, the circuit court stated: “He’s — he doesn’t have a clean record.” (R. 4.) There was a *452 sufficient basis in the record from which the circuit court could deny Ward’s application for youthful-offender status. Accordingly, we conclude that the circuit court did not abuse its discretion in denying Ward’s youthful-offender application. Goolsby, swpra.
II.
Ward next contends that the circuit court erred in denying his motion to suppress the statements he made to law enforcement while he was in custody. Specifically, Ward argues that he was not advised of his juvenile Miranda rights before he made his statements to law enforcement. See Miranda v. Arizona, 384 U.S. 436 (1966); § 12-15-202(a) and (b), Ala.Code 1975. The State argues that Ward was properly informed of his juvenile Miranda rights and that the circuit court therefore properly denied Ward’s motion to suppress.[1]
‘“This Court reviews de novo a circuit court’s decision on a motion to suppress evidence when the facts are not in dispute. See State v. Hill, 690 So.2d 1201, 1203 (Ala.1996); State v. Otwell, 733 So.2d 950, 952 (Ala.Crim.App.1999).’” State v. C.B.D., 71 So.3d 717, 718 (Ala.Crim.App.2009) (quoting State v. Skaggs, 903 So.2d 180, 181 (Ala.Crim.App.2004)).
“As our Supreme Court has stated:
“ ‘The Fifth Amendment to the United States Constitution provides that “[n]o person ... shall be compelled in any *453 criminal case to be a witness against himself.” U.S. Const. Amend. V. In Miranda, the United States Supreme Court held that the right against self-incrimination “is fully applicable during a period of custodial interrogation.” 384 U.S. at 460. The Supreme Court in Miranda further held that “the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege_” 384 U.S. at 469. Before a custodial interrogation, a suspect must be informed of these rights, now commonly referred to as Miranda rights. 384 U.S. at 444 (“Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed”). The Supreme Court in Miranda recognized that “the defendant may waive effec-tuation of these rights, provided that the waiver is made voluntarily, knowingly, and intelligently.” Id.’
“Ex parte Landrum, 57 So.3d 77, 81 (Ala.2010).”
Thompson v. State, 97 So.3d 800, 805 (Ala.Crim.App.2011).
Because Ward was a juvenile at the time he was questioned, Ward had additional rights under Alabama law. Section 12-15-202, Ala.Code 1975, effective at the time of Ward’s arrest, states, in pertinent part:
“(b) Rights of the child before being questioned while in custody. Before the child is questioned about anything concerning the charge on which the child was taken into custody, the person asking the questions shall inform the child of the following rights:
“(1) That the child has the right to a child’s attorney.
“(2) That if the child is unable to pay for a child’s attorney and if the parent, legal guardian, or legal custodian of the child has not provided a child’s attorney, one will be appointed.
“(3) That the child is not required to say anything and that anything the child says may be used against the child.
“(4) That the child has a right to communicate with his or her parent, legal guardian, or legal custodian, whether or not that person is present. If necessary, reasonable means will be provided for the child to do so.”[2]
Ward challenges the decision of the circuit court to deny his motion to suppress his statements because, according to him, there was not a “clear, valid conveyance that Ward had a right to have a family member present.” (Ward’s brief, p. 27.) The State argues, however, that there was sufficient evidence for the circuit court to conclude that there was substantial compliance with the juvenile Miranda requirement.
At the suppression hearing the State offered the testimony of Officer Keith Cook, which, the State says, tended to show that Ward was Mirandized as a juvenile before Cook elicited certain statements from Ward. On direct examination, Officer Cook testified as follows:
“[Prosecutor]: Well, what did you ask him before—
“[Officer Cook]: I asked him did he need to call anybody in his family or anybody.
*454 “[Prosecutor]: And did he acknowledge to you that he wanted to call anybody in his family at that point?
“[Officer Cook]: No — he said no.”
(R. 151.) Later, on cross-examination, Officer Cook testified as follows:
“[Defense Counsel]: Okay. At what point did you ask him if — I believe you stated that you asked him if there was anybody that you needed to call for him. When did you do that?
“[Officer Cook]: Right after I advised him of what he was charged with.
“[Defense Counsel]: Okay. Why did you ask him that?
“[Officer Cook]: To see if he needed anybody to come down, because I just had told him what he was being charged with.
“[Defense Counsel]: Was that, ‘Do I need to let anybody know where you are?’
“[Officer Cook]: No. I said, ‘Do you need to contact your family?’
“[Defense Counsel]: Why did you ask him if he needed to contact his family?
“[Officer Cook]: If I charge somebody, that’s just a practice of mine. I always ask them if they need to contact anybody.
“[Defense Counsel]: Okay. And that seems like a polite — nice thing to do. And you do that whether they’re — that’s your practice? That’s the standard operating procedure?
“[Officer Cook]: If they are being charged and taken to the jail.
“[Defense Counsel]: All right. And is that for the purpose of family knowing where they are, not worrying about them?
“[Officer Cook]: Or if they want to tell them anything, ask them anything. You know, just—
“[Defense Counsel]: Okay. Just a general kind of question you do, generally?
“[Officer Cook]: If they’re under arrest.
“[Defense Counsel]: Okay. Did you advise Mr. Ward — and then you went into advising him of his standard Miranda rights. Right?
“[Officer Cook]: Yes, sir. Yes, sir.
“[Defense Counsel]: That’s everything that was said?
“[Officer Cook]: Yes, sir.
“[Defense Counsel]: There was nothing else said about family?
“[Officer Cook]: No, sir, after—
“[Defense Counsel]: All right. So you never advised him that he may have a right to communicate with his parent or guardian, specifically prior to giving you a statement, did you?
“[Officer Cook]: No, sir.
“[Defense Counsel]: Okay. And there’s nothing on that waiver-of-rights form that’s marked State’s Exhibit 30 that says anything about him communicating with his family before he gave a statement, does it?
“[Officer Cook]: No, sir.
“[Defense Counsel]: Do you know how old Mr. Ward was whenever you arrested him?
“[Officer Cook]: Yes, sir.
“[Defense Counsel]: How old was he?
“[Officer Cook]: 17.”
(R. 155-57.) Before the circuit court denied Ward’s motion to suppress, it stated:
“Mr. Cook — or Investigator Cook did, in my opinion, give Mr. Ward, the defendant, an opportunity to talk with family members. I think, at some basic level, that was an opportunity for him to talk to a parent. I think he was fully aware, based on his own testimony, that he was being arrested on the offense of robbery *455 in the first degree — by his own testimony in the suppression hearing. Therefore, I am not going to suppress the statement[s].”
(R. 167.)
The State contends that the exchange between Ward and Officer Cook sufficiently informed Ward of his juvenile Miranda rights despite the fact that Officer Cook failed to use the “exact language of the statute.” (State’s brief, p. 9.) Additionally, the State argues that whether Ward was clearly informed of his juvenile Miranda warnings did not hinge on Officer Cook’s failure to use the word “right”; thus, the State contends that the circuit court did not err in admitting Ward’s statements into evidence. (State’s brief, p. 9.) We do not agree, however, with the State’s argument that Ward was adequately informed of his juvenile Miranda warnings.
The United States Supreme Court has stated the following concerning Miranda warnings:
“ ‘Reviewing courts ... need not examine Miranda warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably “conve[y] to [a suspect] his rights as required by Miranda.” [California v.] Prysock, supra, 453 U.S. [355], at 361 [101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) ].’
“Duckworth v. Eagan, 492 U.S. 195, 203, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989). See California v. Prysock, 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) (‘Miranda itself indicated that no talismanic incantation was required to satisfy its strictures.’).”
Albarran v. State, 96 So.3d 131, 149 (Ala.Crim.App.2011). Additionally, this Court had held that “[n]o precise language is required as long as the substance of the Miranda warning is given.” Jones v. State, 47 Ala.App. 568, 570, 258 So.2d 910, 912 (Ala.Crim.App.1972) (holding that the phrase “ ‘one will be appointed to represent you before any questions’ ” was “sufficiently clear to convey to the [defendant] that he had the right to confer with an attorney before any questions and then to decide upon his course of action”).
In Ex parte Price, 725 So.2d 1063 (Ala.1998),’ the Alabama Supreme Court held:
“[I]t is well settled that, before being questioned, an accused in custody must be informed in clear and unequivocal terms that he has the right to remain silent, that anything he says can be used against him in court, that he has the right to have counsel present at the interrogation, and that if he is indigent and cannot afford to pay a lawyer, the court will appoint one to represent him during the interrogation.”
725 So.2d 1063 at 1067 (emphasis added). See also Ex parte Siebert, 555 So.2d 780, 781-82 (Ala.1989). In addition to the standard Miranda requirements, a juvenile must be advised of his additional right to communicate with a parent or guardian. See § 12-15-202, Ala.Code 1975.
Prior to January 1, 2009, the effective date of § 12-15-202, Ala.Code 1975, Rule 11(B), Ala. R. Juv. P., stated:
“Before the child is questioned about anything concerning the charge on which the child was arrested, the person asking the questions must inform the child of the following rights:
“(1) That the child has the right to counsel;
“(2) That if the child is unable to pay a lawyer and if the child’s parents or guardian have not provided a lawyer, one can be provided;
“(3) That the child is not required to say anything and that anything the child says may be used against the child;
*456 “(4) That if the child’s counsel, parent, or guardian is not present, then the child has a right to communicate with them, and that, if necessary, reasonable means will be provided for the child to do so.”
The language in Rule 11(B)(4), Ala. R. Juv. P., is substantially similar to the statutory provision applicable in Ward’s case, § 12-15-202(b)(4), Ala.Code 1975. Thus, our caselaw applying Rule 11(B)(4), Ala. R. Juv. P., is persuasive authority in construing § 12-15-202(b)(4).
In State v. Nelson, 898 So.2d 1245 (Ala.Crim.App.2003), a 16-year-old defendant, was questioned by law enforcement concerning alleged offenses. On appeal, the State argued that the trial court improperly granted the defendant’s motion to suppress a statement the defendant had made to law enforcement. The trial court’s holding was quoted by this Court:
“‘[I]t is the finding of this Court that the juvenile Miranda or, as it is sometimes referred to, the Super Miranda, informing the juvenile that he could have contact with a parent or guardian was necessary. Clearly, evidence would indicate that there was contact between the Russellville Police Department and the family of the juvenile. However, it is clear that Rule 11 of the Alabama Rules of Juvenile Procedure provides “that if the child’s counsel, parent, or guardian is not present, then the child has the right to communicate with them, and that, if necessary, reasonable means will be provided for the child to do so.” (Emphasis added). The child must be informed that he has the right to communicate with his family. Law enforcement electing to talk with a family member does not fulfill the requirement.
[[Image here]]
“ ‘Therefore, it is ORDERED, ADJUDGED and DECREED that the statements given by the Defendant ... in the referenced cases, ... [are] hereby suppressed.’ ”
893 So.2d at 1246-47 (capitalization in original). This Court rejected the State’s narrow argument concerning legislative intent — specifically, the State argued that § 12-15-34.1, Ala.Code 1975, divests a juvenile of his rights under Rule 11(B). This Court ultimately held that the trial court properly granted the defendant’s motion to suppress after it noted the State’s concession that the defendant had not been advised of his juvenile rights under Rule 11(B), Ala.Code 1975. See also Young v. State, 730 So.2d 1251, 1254 (Ala.Crim.App.1998) (holding that “[defendant’s] custodial statement was wrongfully admitted in evidence because [defendant] was not informed that he had a right to communicate with his parent or guardian, as provided in Rule 11(B), Ala. R. Juv. P.”).
In W.T.K. v. State, 598 So.2d 33, 37 (Ala.Crim.App.1992), the juvenile defendant argued on appeal that the trial court erred when it admitted his confession into evidence. Specifically, the defendant claimed that “the statement of his rights that he was read was erroneous because it did not say that reasonable means would be taken to provide the [defendant] with the opportunity to talk with his parents.” In rejecting the defendant’s argument, this Court relied on its decision in M.B.M. v. State, 563 So.2d 5 (Ala.Crim.App.1989), in which it held that “the confession was not rendered involuntary by the fact that the rights read to the defendant did not include the phrase ‘reasonable means will be provided.’” 598 So.2d at 37. Nevertheless, we have held that
“ ‘[w]hen the State offers in evidence a juvenile’s statement, it must show that the juvenile made the statement after being advised of his rights under Rule 11[ (B) ], Ala. R. Juv. P. Ex parte Whi- *457 senant, 466 So.2d 1006 (Ala.1985); Carr v. State, 545 So.2d 820 (Ala.Crim.App.1989). Rule 11[(B)] requires that a juvenile be given the standard Miranda warnings and also requires that he be told that he has the “right to communicate with [his counsel, parent, or guardian if they are not present] and that, if necessary, reasonable means will be provided for him to do so.” ’ ”
L.L.J. v. State, 746 So.2d 1052, 1055 (Ala.Crim.App.1999) (quoting Ex parte Smith, 611 So.2d 1023, 1024-25 (Ala.1992)). Here, in addition to not being clearly informed that reasonable means would be provided for him to communicate with a parent, legal guardian, or legal custodian, Ward was not informed of his right to communicate -with a parent, legal guardian, or legal custodian.[3]
In its brief, the State points to our decision in Weaver v. State, 710 So.2d 480 (Ala.Crim.App.1997); specifically, the State asserts that “this Court has indicated that the warning should be that a defendant ‘can communicate’ with his parents.” (State’s brief, p. 9 (citing Weaver, 710 So.2d 480 (quoting Ex parte Whisenant, 466 So.2d 1006, 1011 (Ala.1985) (Torbert, C.J., concurring in part and dissenting in part)))).
We are not persuaded, however, that the State’s isolated quotation from Weaver is contrary to our holding here. Immediately following the quoted language from Weaver is this language:
“This Court has recognized the importance of affording children the additional right in Rule 11(B)(4), stating:
“ ‘Informing the child of his right to communicate with a parent or guardian serves two important purposes. First, “[t]his simple warning will give the juvenile the opportunity to obtain the guidance necessary in order for him to evaluate his rights.” Ex parte Whisenant, 466 So.2d at 1012. (Torbert, C.J., concurring in pertinent part). Secondly, the rule recognizes that “the parent or guardian may be the conduit through which the juvenile secures an attorney.” Id.’
“Payne v. State, 487 So.2d 256, 259 (Ala.Crim.App.1986), quoted in L.J.V. v. State, 545 So.2d 240, 245 (Ala.Crim.App.1989).
“ ‘ “The rationale of courts holding a child’s request to see a parent equivalent to a request to see an attorney ... is that, while an adult in trouble normally requests an attorney’s assistance, a child logically expresses his desire for help and his unwillingness to proceed alone by requesting a parent’s presence.... [I]n the case of a child, the right to assistance of counsel is hollow unless a parent is present, for a parent is normally the child’s only avenue through which to evaluate and exercise the right to counsel.”
“ ‘[Samuel M. Davis, Rights of Juveniles § 8.13 at 3-64.5 (2d ed.1991) ].’
“E.C. v. State, 623 So.2d 364, 368 (Ala.Crim.App.1992).”
Weaver, 710 So.2d at 485 (emphasis added). Thus, the purpose of the juvenile warnings is not to require that the juvenile have a reason or need before he may initiate contact with a parent or guardian; instead, the warnings are to inform the juvenile that he may exercise his right to communicate with a parent or a guardian and that, if he wants to communicate with *458 a parent or a guardian, reasonable means will be provided for him to do so.[4]
The record in this case reflects that Ward was arrested for first-degree robbery and was thereafter transported to the criminal-investigation division of the police department where: (1) authorities advised Ward of the charge against him; (2) asked Ward if he needed to contact his family; (3) advised Ward of his standard Miranda rights; and (4) instructed Ward that he could sign a waiver-of-rights form, which Ward signed. Under § 12-15-202(b), Ala. Code 1975, a child in custody must be informed of his or her right to communicate with a “parent, legal guardian, or legal custodian ” before being “questioned about anything concerning the charge on which the child was taken into custody” (emphasis added). While in custody, Ward was never explicitly informed of his right to communicate with his parent or guardian before being questioned about the charge of first-degree robbery, nor was he informed that reasonable means would be provided for him to do so, as provided in § 12-15-202(b), Ala.Code 1975. Rather, Officer Cook merely asked Ward if he “need[ed] to contact [his] family”; Cook did not inform Ward that he had the right to do so and that, if necessary, Ward would be provided with reasonable means to do so. Furthermore, Officer Cook’s reference to “family” did not specifically convey to Ward that he had the right to communicate with a parent, legal guardian, or legal custodian. Thus, Officer Cook failed to effectively communicate to Ward that he was entitled to speak with his parent or guardian regardless of whether Ward thought he “needed” to or not. See California v, Prysock, 453 U.S. 355, 363 (1981) (Stevens, J., dissenting) (holding “[t]he warnings given [defendant] were defective, not because ‘the officer did not parrot the language of Miranda,’ but because, in the form in which the warnings were given, they failed to convey the essential information required by Miranda.”). It is clear from the record that authorities did not fully convey to Ward his juvenile Miranda rights as required by § 12-15-202(b), Ala.Code 1975. Accordingly, Ward was deprived of his juvenile Miranda rights under § 12-15-202(b), Ala.Code 1975, and the circuit court erroneously admitted the statements Ward made to the police.
We must now consider whether the admission of Ward’s statements into evidence was harmless error. Rule 45, Ala. R.App. P. See Coral v. State, 628 So.2d 954, 973 (Ala.Crim.App.1992), aff'd, 628 So.2d 1004 (Ala.1993), cert. denied, 511 U.S. 1012 (1994).
“The proper inquiry in determining whether the constitutional error in this case is harmless was set out by the United States Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967):
“ ‘In fashioning a harmless-constitutional-error rule, we must recognize that harmless-error rules ‘ can work very unfair and mischievous results when, for example, highly important and persuasive evidence or argument, though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one....
‘“... We prefer the approach of this Court in deciding what was harmless error in our recent case of Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 [(1963)]. There *459 we said: “The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.” Id., at 86-87, 84 S.Ct. at 230.... Certainly error, constitutional error, in illegally admitted highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was not injury or to suffer a reversal of his erroneously obtained judgment. There is little, if any, difference between our statement in Fahy v. State of Connecticut about “whether there is a reasonable possibility that the evidence complained of did not contribute to the conviction” and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our Fahy case when we hold, as we now do, that before a federal constitutional error can be held harmless the court must be able to declare a belief that it was harmless beyond a reasonable doubt. While appellate courts do not ordinarily have the original task of applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard.... ’
“386 U.S. at 23-24, 87 S.Ct. 824.
“ ‘In order for the error to be deemed harmless under Rule 45, [Ala. R.App. P.], the state must establish that the error did not injuriously affect the appellant’s substantial rights.’ Coral v. State, 628 So.2d [954] at 973 [(Ala.Crim.App.1992)].” Young v. State, 730 So.2d 1251, 1255 (Ala.Crim.App.1998).
In the present case, the State introduced into evidence an audio recording of Ward’s statements concerning the events before and after the robbery at the gas station. In his first statement, Ward stated that he was with Kinsey and McGee around 12:30 a.m. on the morning of the robbery. Ward stated that he saw a sawed-off shotgun in the car parked outside McGee’s trailer and that Kinsey took the shotgun out of the car before Kinsey left McGee’s trailer; Ward claimed that “he believed that they were going to rob someone.” (Ward’s brief, p. 15.) Ward further stated that he saw Kinsey and an unknown male return to McGee’s trailer around 5:00 a.m. In his second statement, however, Ward claimed that after Kinsey and the unknown male returned to McGee’s trailer, the unknown male wanted to exchange clothes with Ward and that the unknown male gave Ward a striped shirt and a pair of embroidered blue-jean shorts, which were allegedly the same clothes one of the robbers was wearing in the surveillance video. Also, the victim testified that the man who took money out of the store’s safe was wearing a striped shirt and jeans with patchwork. Thus, the second statement not only placed the person wearing the striped shirt and the embroidered blue-jean shorts at the crime scene, but also indicated that the person wearing the striped shirt and the embroidered blue-jean shorts was an active participant in the robbery. Without Ward’s statement, the residual evidence did not make for an “ironclad” circumstantial case against Ward. See Ex parte Greathouse, 624 So.2d 208, 211 (Ala.1993). The State even referenced Ward’s statement concerning the clothes the person in the surveillance video was wearing on the morning of the robbery— the striped shirt and the embroidered *460 blue-jean shorts — in its argument against Ward’s motion for a judgment of acquittal. The State specifically argued:
“[Prosecutor]: Yes, sir, Judge. I think we have a very strong circumstantial case in this case that the defendant has admitted in his statement, that he was actually wearing the clothes that are in the video of the robbery. We have had Mr. McGee’s testimony that [Ward] came over that morning wearing nothing but the shorts that are State’s Exhibit, I think, 30, that are already in evidence and that were clearly visible in the video at the time of the robbery. I think all the facts and circumstances, the jury can conclude and find beyond a reasonable doubt that this defendant was involved in the robbery that morning and is guilty.”
(R. 206.)
Accordingly, we are of the opinion that the erroneous admission of Ward’s statements was not harmless beyond a reasonable doubt; therefore, we must reverse the judgment of the circuit court and remand this cause for further proceedings consistent with this opinion.
APPLICATION FOR REHEARING OVERRULED; OPINION OF MAY 25, 2012, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
WINDOM, P.J., and WELCH, KELLUM, and BURKE, JJ., concur.

. The State also- argues for the first time on rehearing that the juvenile Miranda rights were not required because Ward was charged with first-degree robbery, an offense that removed Ward's prosecution to the circuit court. See § 12-15-204, Ala.Code 1975. Specifically, the State argues that the decision to charge Ward with a Class A felony was made prior to any questioning regarding the specific offense and that, therefore, Ward was not entitled to the protections of § 12-15-202, Ala.Code 1975. (State’s brief in support of application for rehearing, p. 12.) We note, however, that this argument is contrary to what the State conceded in its brief on original submission. See (State's brief, p. 7) ("It would appear that Anderson v. State, 729 So.2d 900 (Ala.Crim.App.1998), cited by the Defendant, which holds that the warning of Rule 11(B) is required even when the child must be prosecuted in the Circuit Court, is equally applicable here.").
In Water Works & Sewer Board of City of Selma v. Randolph, 833 So.2d 604, 608-09 (Ala.2002), the Alabama Supreme Court stated:
“The well-settled rule of this Court precludes consideration of arguments made for the first time on rehearing. See Ex parte Lovejoy, 790 So.2d 933, 938-39 (Ala.2000), where this Court stated:
" 'Vesta raises for the first time in its application for rehearing the argument that it is a third-party beneficiary of the retail installment contract between Love-joy and Allen Motor Company. "We can not sanction the practice of bringing up new questions for the first time, in an ex parte application for rehearing.” Robinson v. Allison, 97 Ala. 596, 604, 12 So. 604 (1893) (on application for rehearing). "We cannot sanction the practice of bringing up new questions for the first time in application for rehearing.” Kirkland v. Kirkland, 281 Ala. 42, 49, 198 So.2d 771, 777 (1967) (on application for rehearing). "We cannot sanction the practice of bringing up new questions for the first time in applications for rehearing.” Cole v. Cole Tomato Sales, Inc., 293 Ala. 731, 735, 310 So.2d 210, 212 (1975) (on application for rehearing). "New supporting arguments presented for the first time on rehearing generally will not be considered.” Stover v. Alabama Farm Bureau Ins. Co., 467 So.2d 251, 253 (Ala.1985) (on application for rehearing). "[Tjhis argument was raised for the first time on application for rehearing, and therefore will not be considered.” Schulte v. Smith, 708 So.2d 138, 141 n. 2 (Ala.1997) (on application for rehearing).’ "
Accordingly, we will not consider the State's argument, made for the first time on rehearing, that the juvenile Miranda rights were not required.

. This section became effective January 1, 2009. Before the effective date of this section. Rule 11, Ala. R. Juv. P., stated the applicable juvenile Miranda rights.

. As we note below, Ward was asked only if he needed to contact his "family"; the officer did not specifically reference a parent, legal guardian, or legal custodian.

. Although Ward replied “No” in response to Officer Cook's inquiry, because that inquiry was insufficient to convey the juvenile Miranda rights, Ward’s response to that inquiry was not a waiver of those rights.