BURKE, Judge.
R.C. was indicted for murder, see § 13A-6-2, Ala.Code 1975. Prior to trial, R.C. filed a motion to suppress inculpatory statements he made in a series of interviews with police officers.[1] After a hearing on the matter, the trial court granted R.C.’s motion. The State now appeals.
The record reveals that Detective Donald Pears of the Mobile Police Department conducted three interviews with R.C. regarding an investigation into the murder of Sary Kinn. During the last interview on .January 14, 2011, R.C. admitted that he and another individual shot and killed Kinn. Before that interview began, Detective Pears informed R.C., who was 16 years old at the time, of his juvenile Miranda[2] rights. R.C. then signed a form indicating that he wished to waive those rights and to speak to police without contacting an attorney, parent, or guardian. In his motion to suppress, R.C. argued that his waiver of those rights was not knowing, intelligent, and voluntary. R.C. also argued that the warnings that were read to him by Detective Pears did not comply with § 12-15-202, Ala. Code 1975, and Ward v. State, 105 So.3d 449 (Ala.Crim.App.2012).
As noted, the trial court granted R.C.’s motion. Specifically, the trial court found that the State “failed to prove the necessary predicate that [R.C.] voluntarily, knowingly, and intelligently waived his Fifth Amendment rights prior to the alleged statements sought to be introduced by the State.” (C2.39.)[3] On appeal, the State argues that the trial court erred in granting R.C.’s motion because, it says, the record established that R.C. was properly informed of his Constitutional rights and that his waiver was valid.
I.
At the hearing on R.C.’s motion to suppress, the content and wording of the juvenile Miranda warning that was read to R.C. was not in dispute. The State introduced into evidence a video recording of the interview in which Detective Pears read R.C. the juvenile Miranda warning as well as the document that Pears read from. See State’s Exhibit 2; C. 91. “This Court reviews de novo a circuit court’s decision on a motion to suppress evidence when the facts are not in dispute.” State v. Skaggs, 903 So.2d 180, 181 (Ala.Crim.App.2004), citing State v. Hill, 690 So.2d 1201, 1203 (Ala.1996); State v. Otwell, 733 So.2d 950, 952 (Ala.Crim.App.1999).
R.C. argued that the wording used to inform him of his juvenile Miranda rights was insufficient as a matter of law. He cites State v. Deramus, 155 So.3d 308, *319 309 (Ala.Crim.App.2013), quoting Ex parte Jackson, 564 So.2d 891 (Ala.1990), in which this Court noted:
“‘The [Alabama Supreme] Court held [in Ex parte Whisenant, 466 So.2d 1006 (Ala.1985)]: “If any one or more [of the Rule 11(A), Ala. R. Juv. P.] warnings are omitted, the use in evidence of any statement given by the child is constitutionally proscribed.” 466 So.2d at 1007.’ ”[4]
According to R.C., the juvenile Miranda warning that was read to him omitted required language.
Section 12-15-202(b), Ala.Code 1975, entitled “Rights of the child before' being questioned while in custody,” provides:
“Before the child is questioned about anything concerning the charge on which the child was taken into custody, the person asking the questions shall inform the child of the following rights:
“(1) That the child has the right to a child’s attorney.
“(2) That if the child is unable to pay for a child’s-attorney and if the parent, legal guardian, or legal custodian of the child has not provided a child’s attorney, one will be appointed.
“(3) That the child is not required to say anything and that' anything the child says may be used against the child.
“(4) That the child has’ a right to communicate with his, or her parent, legal guardian, or legal custodian, whether or not that person is present. If necessary, reasonable means will be provided for the child to do so.
“(5) That even if the child’s attorney is not present or has not yet been appointed,’ the child has the right to communicate with him or her and that, if necessary, reasonable means will be provided for the child to do so.”
It was undisputed that the juvenile ‘Miranda’ warning read to R.C. did not contain the specific words “if [his] parent, legal guardian, or legal custodian ... has not provided a child’s attorney, one will'be appointed.” § 12-15-202(b)(2), Ala.Code 1975. According to R.C., that omission rendered thé juvenile Miranda warning constitutionally deficient. We disagree.
The record reveals that Detective Pears read to R.C. the following warning before any questioning began:
“Before we ask you any questions, you must understand, your rights.
“You have the right to remain silent. “Anything you say can be used against you in court.
“You are not required to say anything and anything you say can be used against you.
“You have the right to counsel.
“You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
“If you cannot.afford a lawyer,.one will be- appointed for you before any questioning if you wish.
“If your counsel, parent, or guardian is not present, you have a right to communicate with them, and if necessary, reasonable means will be provided for you to do so.
*320 “If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.
“A lawyer will also be provided for you now, if you wish.”
(C. 91.) Thus, R.C. was clearly advised that he had the right to speak with an attorney and that if he could not afford to .hire an attorney, one would be provided. The question is whether the above-quoted language informed R.C. that, if his parent, guardian, or legal custodian did not provide him with an attorney, one would be provided. We hold that it did.
In Ward v. State, 105 So.3d 449, 455-56 (Ala.Crim.App.2012), this Court held:
“The United States Supreme Court has stated the following concerning Miranda warnings:
“ ‘ “Reviewing courts ... need not examine Miranda warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably ‘conve[y] to [a suspect] his rights as required by Miranda.’ [California v.] Prysock, supra, 453 U.S. [355], at 361 [101 S.Ct. 2806, 69 L.Ed.2d 696 (1981)].”
“ ‘Duckworth v. Eagan, 492 U.S. 195, 203, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989). See California v. Prysock, 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) (“Miranda itself indicated that no talismanic incantation was required to satisfy its strictures.”).’
“Albarran v. State, 96 So.3d 131, 149 (Ala.Crim.App.2011). Additionally, this Court had held that ‘[n]o precise language is required as long as the substance of the Miranda warning is given.’ Jones v. State, 47 Ala.App. 568, 570, 258 So.2d 910, 912 (Ala.Crim.App.1972)(hold-ing that the phrase ‘ “one will be appointed to represent you before any questions’” was ‘sufficiently clear to convey to the [defendant] that he had the right to confer with an attorney before any questions and then to decide upon his course of action’).
“In Ex parte Price, 725 So.2d 1063 (Ala.1998), the Alabama Supreme Court held:
“ ‘[I]t is well settled that, before being questioned, an accused in custody must be informed in clear and unequivocal terms that he has the right to remain silent, that anything he says can be used against him in court, that he has the right to have counsel present at the interrogation, and that if he is indigent and cannot afford to pay a lawyer, the court will appoint one to represent him during the interrogation.’
“725 So.2d 1063 at 1067 (emphasis added). See also Ex parte Siebert, 555 So.2d 780, 781-82 (Ala.1989). In addition to the standard Miranda requirements, a juvenile must be advised of his additional right to communicate with a parent or guardian. See § 12-15-202, Ala.Code 1975.
“Prior to January 1, 2009, the effective date of § 12-15-202, Ala.Code 1975, Rule 11(B), Ala. R. Juv. P., stated:
“ ‘Before the child is questioned about anything concerning the charge on which the child was arrested, the person asking the questions must inform the child of the following rights:
“ ‘(1) That the child has the right to counsel;
“ ‘(2) That if the child is unable to pay a lawyer and if the child’s parents *321 or guardian have not provided a law-. yer, one can be provided;
“ ‘(3) That the child is not required to say anything and that anything the child says may be used against the child;
“ ‘(4) That if the child’s counsel, parent, or guardian is not present, then the child has a right to communicate with them, and that, if necessary, reasonable means will be provided for the child to do so.’
“The language in Rule 11(B)(4), Ala. R. Juv. P., is substantially similar to the statutory provision applicable in Ward’s case, § 12-15-202(b)(4), Ala.Code 1975. Thus, our caselaw applying Rule 11(B)(4), Ala. R. Juv. P., is persuasive authority in construing § 12-15-202(b)(4).

((

“In W.T.K. v. State, 598 So.2d 38, 37 (Ala.Crim.App.1992), the juvenile defendant argued on appeal that the trial court erred when it admitted his confession into evidence. Specifically, the defendant claimed that ‘the statement of his rights that he was read was erroneous because it did not say that reasonable means would be taken to provide the [defendant] with the opportunity to talk with his parents.’ In rejecting the defendant’s argument, this Court relied on its decision in M.B.M. v. State, 563 So.2d 5 (Ala.Crim.App.1989), in which it held that ‘the confession was not rendered involuntary by the fact that the rights read to the defendant did not include the phrase “reasonable means will be provided.”’ 598 So.2d at 37.”
In the present case, R-.C. was informed of his right to counsel as well as his right to communicate with his parent or guardian. Additionally,, he was informed that if he could not afford an attorney, one would be appointed. Specifically, he was also informed that “[a] lawyer will also be provided for you now,% if you wish.” (C. 91(em-phasis added)). We hold that this language adequately conveyed the substance of R.C.’s juvenile Miranda rights. Therefore, R.C. was sufficiently informed that he had the right to speak with his parent or guardian and that, if his parent-or guardian could not afford to provide him with a lawyer, one would be appointed. The fact that Detective Pears did not use the specific language contained in § 12-15-202(b)(2) did not render the warnings constitutionally deficient.
II.
Next, R.C. argued that he did not knowingly, voluntarily, and intelligently waive his juvenile Miranda rights. R.C. claimed at his suppression hearing, as he does on appeal, that he was'an orphan and that, therefore, he had no parents. R.C. also asserted that he did not have a legal guardian or a legal custodian. Therefore, he argued, the portion of the juvenile Miranda warning in which he was informed of his right to communicate with a parent, guardian, or legal custodian was meaningless to him because, he said, he did not have a parent, guardian, or legal custodian. R.C. also asserted that, at the time he was questioned, he “could not read, write, or comprehend the English language.” (C. 48.)[5] Additionally, R.C. claimed that he performed poorly in school, had diminished mental capacity, and did not understand the meaning of the words “guardian” or “custodian.” (C. 54-55.)
However, the only witness who testified at the suppression hearing was Detective Pears. During defense counsel’s cross-ex- *322 animation of Detective Pears, the following exchange occurred:
“[Defense counsel]:' Okay, As to the juvenile portion of the Miranda warnings, you at what time determined whose parents [R.C.] had? Did you find out who his parents were?
“[Detective Pears]: I knew he was living with his sister, grandmother, and uncle. They lived in the house with him.
“[Defense counsel]:' Did you find who his mother and father were?
“[Detective Pears]: Do what now?
“[Defense counsel]: Who was his mother and father?
“[Detective Pears]: I have no idea.
“[Defense counsel]: Okay, he was an orphan, was he not?
. “[Detective Pears]: Do what now?
“[Defense counsel]: He was an orphan. .He had no mother or father?
“[Detective Pears]: Not to my knowledge he wasn’t, I was never told that.
“[Defense counsel]: • Did you ask about his momma and his daddy?
“[Detective Pears]: Yes, in the earlier interview we talked — asked him about his mother, about who did he live with and that’s when he told m’e that he was living with his grandmother, his sister, and his uncle.
“[Defense counsel]: Well, let’s talk about these Miranda warnings where you warned him he had a right to talk to his parents. Who were his parents?
“[Détective Pears]: I’m telling you how all that I knew about that. I’m saying that he was living with his grandmother, his grandmother, his sister, and his uncle lived there. That’s all that I knew of.
“[Defense counsel]: But you advised him he had a right to talk to his parents before he talked to you, did you not?
“[Detective Pears]: Yes.
“[Defense counsel]: He didn’t have any parents, did he?
“[Detective Pears]: He [has] a mother but I don’t know her. I’m saying I didn’t question him about what’s your mother’s name, where is your mother at but I advised him of his Miranda.
“[Defense counsel]: You never tried to contact his parents?
“[Detective Pears]:' No, I didn’t, only the guardian — I mean, the people that was at his house, I contacted them. That was done previously.
“[Defense counsel]: In fact, he has no guardian — legal guardian, does he?
“[Detective Pears]: I don’t know that. You’re saying that, I have no knowledge of [that].
“[Defense counsel]: But you advised him, did you not, that he had a right to talk to his parents; is that correct?
“[Detective Pears]: Yes, yes.”
(R2. 27-29.)[6]
Although defense counsel repeatedly asserted, in his motion to suppress, at the hearing, and in his brief on appeal, that R.C. did not have parents or a legal guardian, he failed to present any evidence to establish that fact. It is well settled that the unsworn arguments and assertions of counsel are not evidence. See Ex parte Alabama Dep’t of Mental Health & Mental Retardation, 937 So.2d 1018, 1026 (Ala.2006) (“Argument of counsel is not evidence.”); American Nat’l Bank & Trust Co. of Mobile v. Long, 281 Ala. 654, 656, 207 So.2d 129, 132 (1968) (noting that *323 an “unsworn statement of. counsel was not evidence”); and Ex parte Russell, 911 So.2d 719, 725 (Ala.Civ.App.2005) (“The unsworn statements, factual assertions, and arguments of .counsel are not evidence.” (citing Singley v. Bentley, 782 So.2d 799, 803 (Ala.Civ.App.2000))). Similarly, there was no evidence presented — in the form' of testimony, school records, or otherwise — that R.C. did not comprehend the English language, that he was functionally illiterate, or that he had diminished mental capacity.
Rather, Detective Pears testified that R.C. appeared to understand English (R2.9); that R.C. appeared to comprehend the questions that were being asked of him (R2.21); and that R.C.’s answers were responsive to the questions being asked (R2.21.) A review of State’s Exhibit 2, the video recording of R.C.’s interview, supports that testimony. Additionally, the record supports the State’s contention that R.C. was advised of, and that he properly waived, his juvénile Miranda rights. '
R.C. also claimed that the waiver of his juvenile Miranda rights was involuntary based on the transcribed copy of his interview. In the transcribed version, Detective Pears asks R.C. if he understands the juvenile Miranda rights that were read to him. R.C.’s' response was transcribed as “(inaudible).” (C. 74.) Similarly, the transcript of the interview reads “(inaudible)” after the following:
“[Detective Pears:] Ok, this is the Waiver I have been advised of my rights, which I’m doing now'and you understand what your rights'are. I [sic] you’re willing to make a statement and answer questions. I do not want to communicate or .talk with a counsel, parent or guardian. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have-been made to me and no pressure or coercion of any kind has been used against me. Is that true?”
(C. 74.) R.C. then signed the document that Detective Pears read to him. According to R.C., the fact that the transcript says “(inaudible)” after Pears’s questions demonstrates that he did not waive his juvenile Miranda rights.
However, a review of video recording of R.C.’s interview reveals that, although R.C. did not clearly speak any words when asked if he understood his rights and was waiving them, R.C. nodded his head in the affirmative and then proceeded to engage in a discussion with Detective Pears about his involvement in the shooting. At the suppression hearing, Detective Pears testified that R.C. .acknowledged that he understood everything that was read to him. (R2.13.) R.C. presented no evidence to contradict Pears’s testimony.
As noted, Detective Pears was the only witness to testify at the suppression hearing, and his testimony was not disputed. Bóth R.C. and the State agree that “[t]his Court reviews de novo a circuit court’s decision on a motion to suppress evidence when the facts are not in dispute.” Woolf v. State, [Ms. CR-10-1082, May 2, 2014] — So.3d —, —(Ala.Crim.App.2014) (internal quotations and citations omitted). See also Fullenwilder v. State, 946 So.2d 899, 900 (Ala.Crim.App.2006)(“At the suppression hearing, only Det. Buford testified, and his testimony was undisputed. Accordingly, we will review the trial court’s decision de novo.”).
In the present case, the State presented evidence that R.C. was' adequately informed of his juvenile - Miranda rights, that he understood those rights, and that he voluntarily waived them. R.C.’s affirmative nodding of his head as well as his signature at the bottom of the waiver form that Detective Pears' read to him indicate *324 that R.C. was aware of his rights but chose to waive them. See Sasser v. State, 497 So.2d 1131, 1134 (Ala.Crim.App. 1986)(“Here the State presented a prima facie showing of voluntariness — Sasser stated that he understood his rights and signed a waiver.”). There is nothing in the record, aside from defense counsel’s un-sworn assertions, that R.C. did not comprehend the English language, that he had no parents or legal guardian, or that he otherwise did not understand his rights. Accordingly, there was no conflicting evidence for the trial court to resolve. Therefore, the trial court erred when it determined that the State failed to prove that R.C. voluntarily, knowingly, and intelligently waived his Fifth Amendment rights prior to his confession.
In his dissenting opinion, Judge Welch states that “[t]he evidence presented at the hearing was ‘susceptible to more than one rational conclusion,’ State v. Ivey, 709 So.2d [502, 505 (Ala.Crim.App.1997)], and because the trial court’s conclusion was based on the combination of evidence discussed above, it cannot be said that the record is devoid of evidence on which the court rationally could have based its decision.” 195 So.3d at 326. However, R.C.’s argument regarding the validity of his Miranda waiver is premised solely on his .assertion that he was an orphan who did not comprehend the English language and, consequently, did not understand the meaning of the words “parent,” “guardian,” or “custodian.” However, R.C. presented nothing at the hearing, other than the unsworn assertions of defense counsel, to establish that he was an orphan or that he did not understand the English language. Thus, even if this Court were to apply an abuse-of-discretion standard of review, the result would still be the same. The record contains no evidence on which the trial court could have rationally based its decision. See Hodges v. State, 926 So.2d 1060, 1072 (Ala.Crim.App.2005)(“A judge abuses his discretion only when his decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based his decision.”)(internal citations omitted).
Based on the foregoing, the judgment of the trial court is reversed and this case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
WINDOM, P.J., and KELLUM and JOINER, JJ., concur. WELCH, J., dissents, with opinion.

.State’s Exhibit 2 is a recording of three separate interviews conducted on January 11, 2011, and January 14, 2011. The State sought to admit only the last interview given on January 14, 2011.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See also § 12-15-202, Ala.Code 1975, entitled, “Rights of the child.”

. "C2” denotes the supplemental record on appeal.

. Rule 11, Ala.'R. Juv. P., was rescinded effective January 1, 2009, as having been super-ceded by § 12-15-202, Ala.Code 1975. However, the relevant language in Rule 11, is substantially similar to the language in § 12-15-202, .Ala.Code 1975. Accordingly,, our caselaw applying Rule 11 is persuasive authority in construing § 12-15-202. See Ward v. State, 105 So.3d 449, 456 (Ala.Crim.App.2012).

. The record indicates that R.C. is of Cambodian decent. Defense counsel described R.C. as a "functionally illiterate Cambodian.” (C. 61.)

. Two separate hearings appear in the record on appeal. "R2” denotes the record from the hearing held on March 14, 2014. No sworn testimony was taken at the first hearing, which was held on February 6, 2014.